IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW YURTH,<br><br>   *Plaintiff,*<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 22-660 |

**PAPPERT, J.**                                                                                                August 22, 2022

## MEMORANDUM

  Andrew Yurth sued Harley-Davidson Credit Corporation for violating the Fair Credit Reporting Act. Harley-Davidson Credit moved to stay the litigation and compel arbitration of Yurth's claim pursuant to an arbitration clause in a Financing Contract for a motorcycle purchase by Yurth's friend Christopher Keaton. Harley-Davidson Credit was not a party to that Contract; the only parties were Keaton, Yurth, who co-signed for Keaton, and EagleMark Savings Bank, the lender.

  Harley-Davidson Credit nevertheless argues Yurth's claim against it should be arbitrated. It asserts that pursuant to the arbitration clause's delegation provision, whether Yurth's claim is arbitrable is a question for the arbitrator to decide. Harley-Davidson Credit further contends it can enforce the arbitration clause as a non-party to the Financing Contract because EagleMark assigned that right to it. Finally, Harley-Davidson Credit claims Yurth is equitably estopped from avoiding arbitration.

  Having considered the parties' arguments, the Court denies Harley-Davidson Credit's Motion to Compel without prejudice. It is not apparent from the face of the

1

complaint and related documents that Yurth's claim is arbitrable. First, there is not clear and unmistakable evidence that Yurth and Harley-Davidson Credit delegated arbitrability questions to an arbitrator and, even if there were, whether the delegation provision is valid. Second, it is not apparent that EagleMark assigned to Harley-Davidson Credit the right to enforce the arbitration clause. Third, it is unclear whether Harley-Davidson Credit can rely on equitable estoppel to enforce the clause. Last, it is not apparent that Yurth's claim falls within the clause's scope.

The Court accordingly orders Yurth and Harley-Davidson Credit to conduct limited discovery on the arbitrability of Yurth's claim. If appropriate, Harley-Davidson Credit can then file a renewed motion to compel which the Court will assess under the summary judgment standard.

I

In October of 2019, Keaton purchased a used 2012 Harley-Davidson motorcycle from a Maryland Harley dealer. (Harley-Davidson's Mot. to Compel Ex. A 1, ECF 15-3.) Yurth helped Keaton do so by entering into a Financing Contract with Keaton and Eaglemark. (Ex. A.) Eaglemark lent Keaton $12,792.19 for paying the dealer ($9778.48) and optional service on the motorcycle ($1,866); and Yurth co-signed because Keaton had bad credit. (*Id.* at 1; Yurth Aff. ¶ 4, ECF 23-1.) The Contract required the loan and interest to be paid back in seventy-two $283.51 monthly installments, totaling $20,412.72. (Ex. A 1.) It also included an arbitration clause providing in relevant part:

> The parties acknowledge and agree that this clause and the Federal Arbitration Act . . . shall govern any and all Claims (defined below) between You (as well as your agents, heirs, and assigns) on the one hand, and ESB and/or any of ESB's successors, assigns, parents, subsidiaries, or affiliates and/or any employees, officers, directors, agents, of the aforementioned on the other hand. The parties agree to arbitrate any and all claims,

> controversies, or disputes including but not limited to those arising out of or relating in any way to Your loan or account, this Contract, advertising or claims relating to this Contract, or the sale of this Contract, whether in contract, tort, statute, or otherwise, as well as recovery of any claim under this Contract (collectively "Claims"). Any Claims, including but not limited to the applicability of this arbitration clause, shall be resolved by neutral binding arbitration.

(*Id.* at ¶ 26.)  Additionally, the Contract included a notice of assignment:

> Upon receipt and funding of this Contract by ESB, some or all of the rights in the Contract will automatically be assigned to Harley-Davidson Credit Corp., pursuant to the Master Assignment Agreement or Participation Agreement in effect between ESB and Harley-Davidson Credit Corp.

(*Id.* at ¶ 24.)  Finally, the Contract is governed by Nevada and federal law.  (*Id.* at ¶ 22.)

Keaton defaulted on the required payments, and his motorcycle was repossessed. (Yurth's Resp. 1–2, 5, ECF 23.)  The remaining $6,012.72 debt was then referred to Synergetic Communications, Harley-Davidson Credit's debt collector.  (*Id.* at 2; Yurth Aff. ¶ 11.)  In March of 2021, Yurth and Syn Comm reached an oral Payment Agreement to settle the debt requiring Yurth to make minimum $100 monthly payments until he paid $4,200.  (Yurth's Resp. 5.)  Yurth and Syn Comm did not agree to or discuss an arbitration agreement.  (Yurth Aff. ¶ 17.)

Yurth satisfied the $4,200 debt in less than a year.  (Yurth's Resp. 5.)  But Yurth alleges Harley-Davidson Credit inaccurately reported his credit—including the outstanding balance and his monthly payment amounts and history under the Payment Agreement—to Experian Information Solutions, Inc., Equifax Information Services, LLC and TransUnion, LLC, and that these companies subsequently did the same.  (*Id.* at 5–6); *see also* (Yurth Aff. ¶¶ 19–22).

3

Yurth disputed these inaccuracies but they were not corrected, so he sued Harley-Davidson Credit, Experian, Equifax and TransUnion[1] for violating the FCRA. (ECF 1.)  With respect to Harley-Davidson Credit, Yurth claims it violated 15 U.S.C. §§ 1681n and 1681o by, among other things, failing to investigate allegedly inaccurate credit information, review information regarding an allegedly inaccurate trade line and report accurate credit information.  (*Id*. at ¶¶ 27–31.)

## II

The Federal Arbitration Act codified a federal policy favoring arbitration.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Because arbitration is a contractual matter predicated on the parties' consent, courts must treat arbitration agreements like other contracts and rigorously enforce their terms.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *AT&T Mobility*, 563 U.S. at 339; *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  The FAA requires parties to arbitrate only when they have agreed to do so.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002).

A written provision in a contract that evidences a transaction "involving commerce"—such as the Financing Contract—to arbitrate a dispute arising from the contract is valid, enforceable and irrevocable except on legal or equitable grounds that exist to revoke any contract.  9 U.S.C. § 2.  This section creates a federal substantive law of arbitrability that applies to any arbitration agreement within the FAA's coverage.  *Moses H. Cone*, 460 U.S. at 24.

---

[1]  Yurth and TransUnion settled.  (ECF 22.)

If any suit is brought in a federal district court on an issue referable to arbitration under a written arbitration agreement, the court, once satisfied the issue is so referable, must stay the case when a party requests it until arbitration has proceeded pursuant to the agreement. § 3. And any party aggrieved by another's refusal to arbitrate under an arbitration agreement can petition a district court for an order compelling arbitration, and the court must grant it unless the "making of" the arbitration agreement is in issue. § 4.

When it is apparent on the complaint's face or documents the complaint relies on[2] that the plaintiff's claims are arbitrable, the court decides the defendant's motion to compel arbitration under the motion to dismiss standard. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773–74 (3d Cir. 2013). When either arbitrability is not apparent from the complaint and its supporting documents or the plaintiff responds to the motion to compel with facts that call arbitrability into question, however, the court must order limited discovery on arbitrability. *See id.* at 776. The court can then decide a renewed motion to compel under the summary judgment standard. *See Robert D. Mabe, Inc. v. OptumRX*, --- F.4th--- (3d Cir. 2022).

### III

### A

The Financing Contract includes a delegation clause, an agreement to arbitrate questions about whether the parties are bound by an arbitration agreement. *See Singh*

---

[2]   This includes documents "integral to or explicitly relied upon" by the complaint that are "undisputedly authentic." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (internal quotation marks omitted); *Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010). The critical question is whether the plaintiff's claims are based on the extrinsic document, not whether the plaintiff cited it. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

*v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019); (Ex. A ¶ 26). "Gateway" arbitrability issues include whether the parties agreed to arbitrate and whether a particular dispute falls within the agreement's terms. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). An agreement to arbitrate a gateway question is an additional, "antecedent" arbitration agreement the FAA and courts treat like other such agreements. *Rent-A-Center*, 561 U.S. at 70.

There must be "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations omitted). If such evidence exists, the court cannot decide gateway questions unless a party specifically challenges the delegation clause and the court determines it is not enforceable. *Singh*, 939 F.3d at 215.

To specifically challenge a delegation clause, a party must reference the delegation clause when opposing a motion to compel arbitration and cannot merely challenge an arbitration agreement's validity overall. *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018). But the party can make the same arguments it uses to contest the enforceability of other provisions in the parties' arbitration agreement. *Id.* at 226–27. Absent a specific challenge, the FAA requires courts to consider the delegation clause valid and enforce it. *Rent-A-Center*, 561 U.S. at 72.

B

There is not clear and unmistakable evidence that Yurth and Harley-Davidson Credit agreed to arbitrate whether Yurth's claims are arbitrable. *See First Options*, 514 U.S. at 944. The Financing Contract provides that claims involving the "applicability of this arbitration clause" will be arbitrated. (Ex. A ¶ 26.) But this delegation clause

governs claims between Yurth and EagleMark—not Yurth and Harley-Davidson Credit. *See* (*id.*). Indeed, Harley-Davidson Credit is not a party to the Contract and it is unclear which, if any, of the Contract's rights were assigned to it. *See infra* subsection IV.A.1

Even if Yurth and Harley-Davidson Credit clearly and unmistakably delegated arbitrability questions to an arbitrator, Yurth specifically challenged the delegation clause's validity. *See Singh*, 939 F.3d at 215. Specifically, Yurth contends this clause "does not empower [Harley-Davidson Credit] to compel arbitration." (Yurth's Resp. 3–4, 15–16.) It is irrelevant that Yurth's arguments contesting the delegation clause are the same ones he uses to challenge the arbitration agreement overall. *See MacDonald*, 883 F.3d at 226–27.[3] Moreover, for reasons explained below, it is not apparent that the delegation clause is valid. *See infra* Section IV.A.

IV

Although it is unclear whether Yurth and Harley-Davidson Credit delegated arbitrability questions to the arbitrator, *see supra* Section III.B, the Court must determine whether Yurth's claim against Harley-Davidson Credit is arbitrable. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). To compel arbitration, a court must conclude (1) the parties' arbitration agreement is valid and (2) the claim(s) at issue fall within its scope. *Abdurahman v.*

---

[3] Harley-Davidson Credit contends "Plaintiff and [Harley-Davidson Credit] agreed to submit the question of whether the dispute is subject to arbitration to the arbitrator." (Harley-Davidson Credit's Memo of Law in Supp. of Mot. to Compel 13–14 (citing delegation clause), ECF 15-2; Harley-Davidson Credit's Reply 7–8 (same), ECF 24.) This argument ignores the language of the Financing Contract's arbitration provision and Yurth's specific challenge to the delegation clause.

*Prospect CCMC LLC*, ---F.4th--- (3d Cir. 2022). It is not apparent that either requirement is satisfied.

A

Ordinary state law contract principles govern the validity of arbitration agreements. *James v. Global TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017). For a contract to be enforceable under Nevada law,[4] there must be an offer, acceptance, consideration and meeting of the minds. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Courts must interpret contracts to effectuate the parties' intent. *Mendenhall v. Tassinari*, 403 P.3d 364, 373 (Nev. 2017). Intent is determined from the contract's language and, if it is unclear, the surrounding circumstances. *Anvui, LLC v. GL Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007).

As a general rule, only parties to a contract can enforce it. *See Wood v. Germann*, 331 P.3d 859, 861 (Nev. 2014). When appropriate, however, traditional state law principles allow contracts—including those containing arbitration agreements—to be enforced by non-parties. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 194–95 (3d Cir. 2001).

1

Harley-Davidson Credit contends it can enforce the Financing Contract's arbitration clause even though it is not a party to the Contract. (Harley-Davidson

---

[4] When, as here, the Court exercises federal question jurisdiction, it must apply the forum state's choice of law rules. *Riffin v. Consol. Rail Corp.*, 363 F. Supp. 3d 569, 575 (E.D. Pa. 2019). Pennsylvania courts generally enforce parties' choice of law provisions. *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Sup. Ct. 2002). Consequently, pursuant to the Financing Contract's choice of law clause, the Court applies Nevada and federal law. *See* (Ex. A ¶ 22).

Credit's Reply 2–4, ECF 24.)  Specifically, Harley-Davidson Credit asserts EagleMark assigned it this right.  (*Id.*)

Contractual rights are generally assignable unless assignment materially changes the contract's terms or the contract expressly precludes assignment.  *Easton Bus. Opp. v. Town Exec. Suites*, 230 P.3d 827, 830 (Nev. 2010).  But an assignment cannot increase the non-assigning party's contractual obligations or risks.  *Ruiz v. City of North Las Vegas*, 255 P.3d 216, 261 (Nev. 2011).  Here, the arbitration clause governs claims between Yurth and Eaglemark or, among others, its "assigns."  (Ex. A ¶ 26.)  A separate provision provides that "some or all of the rights" in the Financing Contract "will automatically be assigned" to Harley-Davidson Credit pursuant to either the "Master Assignment Agreement" or "Participation Agreement" between EagleMark and Harley-Davidson Credit.  (*Id.* at ¶ 24.)

It is unclear whether EagleMark assigned its right to enforce the arbitration agreement to Harley-Davidson Credit.  As an initial matter, that Harley-Davidson Credit and EagleMark are wholly owned subsidiaries of a different company, Harley-Davidson Financial Services, Inc., is irrelevant.  (Harley-Davidson Credit's Memo of Law in Supp. of Mot. to Compel 2 (citing SEC filing), ECF 15-2.)  Moreover, aside from Harley-Davidson's *post hoc* assertions, there is no evidence any of EagleMark's contractual "rights"—including the right to enforce the arbitration clause—were "automatically" assigned to Harley-Davidson Credit.  (Ex. A ¶ 24.)  Even if such an assignment occurred, it must have been pursuant to a Master Assignment or

9

Participation Agreement between EagleMark and Harley-Davidson Credit. (*Id.*) The record contains no such document.[5]

2

In one sentence of its reply brief, Harley-Davidson Credit appears to contend it can enforce the arbitration agreement using equitable estoppel. (Harley-Davidson Credit's Reply 2.) Harley-Davidson waived this perfunctory, throwaway argument. *Markert v. PNC Fin. Servs. Grp., Inc.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011).

The argument fails on the merits too. Using equitable estoppel, non-signatories to a contract containing an arbitration clause can compel arbitration against a signatory. *Ahlers v. Ryland Homes Nevada, LLC*, 367 P.3d 743 (Table), No. 52511, 2010 WL 3276221, at *1 (Nev. Apr. 16, 2010). The doctrine applies when either (1) a contract signatory must rely on its terms when asserting claims against the non-signatory or (2) a signatory makes allegations of concerted and interdependent misconduct by the non-signatory and another signatory. *See Hard Rock Hotel, Inc. v.*

---

[5] Harley-Davidson Credit cites *CardioNet, Inc. v. Cigna Health Corp.* for the "basic principle of assignment law" that an assignee occupies the same legal position under the contract as the assignor. 751 F.3d 165, 178 (3d Cir. 2014). That principle, however, assumes an assignment occurred, and it is unclear whether it did here. Harley-Davidson Credit also argues Yurth understood the Financing Contract "would be assigned to [Harley-Davidson Credit] by Eaglemark." (Harley-Davidson Credit's Reply 3.) The Financing Contract indicates otherwise. It both fails to clarify which, if any, of EagleMark's rights would be assigned to Harley-Davidson Credit and requires any such assignment to comply with other agreements there is no evidence of. *See* (Ex. A ¶ 24).
  Additionally, Harley-Davidson Credit argues it and Yurth entered into a "contractual agreement" as a "basis for his claims regarding" his account with Harley-Davidson Credit, and that Yurth agreed to arbitrate all such claims. (Harley-Davidson Credit's Memo of Law in Supp. of Mot. to Compel 11); *see also* (Harley-Davidson Credit's Reply 5). But the only arbitration clause at issue is the Financing Contract's, and the clause solely governs claims between Yurth and EagleMark. (Ex. A ¶ 26.) In addition, the clause states that only the "parties" agree to arbitrate certain claims. (*Id.*) The parties to the Contract are Yurth, EagleMark and Keaton—not Harley-Davidson Credit. *See* (Ex. A).

*Eighth Judicial District Ct.*, 390 P.3d 166 (Table), No. 71274, 2017 WL 881877, at \*2 (Nev. Feb. 27, 2017).

It is unclear whether Harley-Davidson Credit can compel arbitration using equitable estoppel. First, Yurth did not rely on the Financing Contract when it sued Harley-Davidson Credit. Instead, Yurth alleged Harley-Davidson inaccurately reported his credit in connection with the Payment Agreement—a different contract with different terms. *See* (Compl. ¶¶ 27–31; Ex. A 1; Yurth's Resp. 5). Second, Yurth alleges only Harley-Davidson Credit, and no other signatory to the Financing Contract, violated the FCRA.

B

State law governs an arbitration clause's scope in the first instance. *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 522 (3d Cir. 2019). Further, there is a federal presumption of arbitrability under which doubts about an arbitration clause's scope are resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24–25. This presumption, however, does not mandate that courts compel arbitration of "any dispute at any time." *Volt Info. Scis., Inc. v. Bd. of Trustees of LeLand Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). The presumption applies only to parties that have consented to and are bound by the arbitration clause—not to non-signatories. *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014).

It is not apparent that Yurth's claim against Harley-Davidson Credit falls within the scope of the Financing Contract's arbitration clause. Yurth agreed to arbitrate its claims against EagleMark—not Harley-Davidson Credit. (Ex. A ¶ 26.) Moreover, the arbitration clause's broad definition of "Claims" is beside the point. In particular,

Claims include those "arising out of or relating in any way to Your loan or account, this Contract." (*Id.*)

To begin, Yurth alleges Harley-Davidson Credit falsely reported his credit information related to the Payment Agreement—not the Financing Contract. *See* (Compl. ¶¶ 27–31). Even if Yurth's claim "relate[s]" to the Financing Contract, Keaton's motorcycle purchase and Harley-Davidson Credit's allegedly inaccurate reporting, it is unclear whether the claim is arbitrable. (Harley-Davidson Credit's Memo of Law in Supp. of Mot. to Compel 14–15; Harley-Davidson Credit's Reply 4–5.) Again, the arbitration clause does not cover Yurth's claim against Harley-Davidson Credit—only those against EagleMark, had he asserted any. (Ex. A ¶ 26.)

The presumption of arbitrability doesn't help Harley-Davidson Credit either. *See Moses H. Cone*, 460 U.S. at 24–25; *Griswold*, 762 F.3d at 271. In any event, the court can compel arbitration of a claim only if the parties agreed to it—which they did not. *See United States Small Bus. Admin. v. Chimicles*, 447 F.3d 207, 209–10 (3d Cir. 2006).[6]

---

[6] Yurth, a U.S. Army servicemember, argues the Financing Contract's arbitration clause is also inapplicable to his claim against Harley-Davidson Credit because the Military Lending Act invalidates that clause. (Yurth's Resp. 14–15, ECF 23; Yurth Aff. ¶¶ 1–2, ECF 23-1.) The MLA prohibits any credit agreement under which a creditor gives "consumer credit" to members of the armed forces and the borrower must arbitrate related claims. 10 U.S.C. §§ 987(e)(3), (f)(3)–(4). Consumer credit is credit offered "primarily for personal, family, or household purposes." 32 C.F.R. § 232.3(f)(1). But consumer credit does not include loans obtained "in the course of purchasing a car or other personal property," offered "for the express purpose of financing the purchase" and secured "by the car or personal property procured." 10 U.S.C. § 987(i)(6); *see also* 32 C.F.R. § 232.3(f)(2)(ii). The MLA does not prohibit the Financing Contract's arbitration clause (but for reasons already explained, it is unclear whether Yurth must arbitrate his claim).
    The MLA's exemption for consumer credit applies. Specifically, Yurth entered into the Contract while helping Keaton purchase a motorcycle, the Contract was expressly offered to finance that purchase and it was secured by the motorcycle. *See* 10 U.S.C. § 987(i)(6); (Ex. A). Yurth argues incorrectly that the consumer credit exemption doesn't apply because the Contract also included financing for a service contract. (Yurth's Resp. 14–15, ECF 23.) Specifically, of the $12,792.19 extended under the Contract, $1,866 (roughly 14.5%) was for the contract. (Ex. A.) These services were merely an ancillary part of a Contract Keaton and Yurth entered into to purchase a motorcycle.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

*See* (Yurth Aff. ¶¶ 4–6); 10 U.S.C. § 987(i)(6).  For example, the Contract's first section, titled "Description of Purchase," lists only the Harley.  (Ex. A 1.)  Without it, Keaton wouldn't need a service contract.  To the extent the motorcycle and services constituted a "bundle" of some sort, as Yurth contends, the latter did not change the Contract's express purpose.  *See* 10 U.S.C. § 987(i)(6); *Juarez v. Drivetime Car Sales Co., LLC*, No. 19-1132, 2021 WL 2404118, at *2–3 (M.D. Fla. June 1, 2021).

13